| | | |
|---|---|---|
| **IFG PORT HOLDINGS LLC** | : | **14th JUDICIAL DISTRICT COURT** |
| **VERSUS NO.** 19 ~ 4675 F | : | **PARISH OF CALCASIEU** |
| **NAVIGATION MARITIME BULGARE** | : | **STATE OF LOUISIANA** |
| **a.k.a. NAVIBULGAR®, HOST** | | |
| **AGENCY, LLC, T. PARKER HOST,** | | |
| **INC., LUZAR LLC and LUZAR** | : | |
| **TRADING SA** | | **DEPUTY CLERK OF COURT** |

OCT 0 2 2019

*Kristen Lewis*

y Clerk of Court
...sieu Parish, Lou...

## PETITION

NOW INTO COURT, through undersigned counsel, comes IFG PORT HOLDINGS LLC,

which respectfully represents as follows:

### THE PARTIES

1.

Plaintiff IFG PORT HOLDINGS LLC, (hereinafter referred to as "IFG" or "Terminal"), is

a New York Limited Liability Company with its principal place of business located New York,

New York. Based in New York, New York, IFG operates and maintains an export grain terminal

at the Port of Lake Charles in Lake Charles, Louisiana. IFG owns the IFG Export Grain Terminal

("Facility") located at the Port of Lake Charles.  The Facility is located 150 Marine Street, Lake

Charles, Louisiana.

2.

The following are made Defendants herein:

a. **Navigation Maritime Bulgare, also known as NAVIBULGAR®** (hereinafter

"Navibuglar"), a foreign company from the country of Bulgaria, not registered to do

business in the State of Louisiana, whose main office address is Navibulgar House,1,

Primorski Boulevard, 9000 Varna, Bulgaria, who will be served under the Long-Arm

Statute.

b. **Host Agency, LLC** (hereinafter "Host Agency"), a foreign company registered to do

business in the State of Louisiana, with a principal business office of 101 Barnard

Street, Suite 400, Savanah, Georgia, 31401, and whose registered agent for service of

process is CT Corporations System, 3867 Plaza Tower Drive, Baton Rouge, Louisiana

70816.

c. **T. Parker Host, Inc.**, a foreign company registered to do business in the State of

Louisiana, with principal place of business is 150 Main Street, Suite 1600, Norfolk

EXHIBIT 1

Virginia 23510, and whose registered agent for service of process is CT Corporations System, 3867 Plaza Tower Drive, Baton Rouge, Louisiana 70816.

d. **Luzar LLC** is a foreign company not registered to do business in the State of Louisiana. According to its Secretary of State filings with the State of Florida, its principal place of business is located at 2600 S. Douglas Rd., Suite 713, Coral Gables, Florida 33134, and whose registered agent for service of process in Florida is Rafael Sanchez, 10900 NW 21ST Street, Suite 190, Miami, Florida 33172, who will be served under the Long-Arm Statute.

e. **Luzar Trading SA**, who, upon information and belief may be a trade name of Luzar LLC, is a foreign business not registered to do business in the State of Louisiana. Its address is located at Torre Swiss Bank, Piso 2, Calle 53 Este, Urb. Marbella, Panama City, Panama, who will be served under the Long-Arm Statute.

## JURISDICTION AND VENUE

3.

This Court has subject matter jurisdiction over this matter based upon Defendants' purposeful availing themselves to the jurisdiction of this forum pursuant to Louisiana's long arm statute.

4.

Moreover, the Terminal Tariff, the controlling contract discussed further below, affirmatively states as follows:

> E. LAW AND JURISDICTION Any and all disputes, claims, liability (including absolute and strict liability), causes of action, damages (including punitive damages), or expenses (including legal fees, costs and expenses) directly or indirectly arising out of, related to, and/or resulting from the User's presence or operation at, or adjacent to, or use of, the elevator facility, which cannot be resolved amicably, shall be subject to the exclusive jurisdiction of the United States District Court for the Western District of Louisiana. If that court lacks subject matter jurisdiction, then exclusive jurisdiction shall rest with either the Fourteenth (14th) Judicial Court for the Parish of Calcasieu, State of Louisiana (for disputes involving or related to the [IFG] elevator facility). Said disputes and/or causes of action shall be resolved under the general maritime law of the United States, in the absence of which Louisiana state law shall apply. In the event that [IFG] must move to dismiss a lawsuit filed in violation of this provision, the reasonable attorneys' fees and costs incurred by [IFG] in so moving shall be paid by the plaintiff(s) to said lawsuit. In the event of any legal proceedings to enforce any provision of this tariff, [IFG] shall be entitled to recover its expenses incurred in such proceedings, including all reasonable attorneys' fees and costs.

A copy of the Terminal Tarrif, which went into effect March 14, 2017, is attached hereto as **Exhibit A**.

5.

Said Tariff is posted in a known website, (http://www.bluewatershipping.com/uploads/ IFG%20Port%20Tariff%20No%202%20March%201%202017.pdf). All parties utilizing an export terminal, such as the Terminal herein, are bound by the applicable tariff at the utilized export terminal by virtue using said terminal. Thus, by utilizing the Terminal, Defendants are subject to the terms and conditions set forth in the Tariff, including those provisions related to applicable law, jurisdiction, and venue.

6.

Venue is proper as the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, and where a substantial part of the property that is the subject of the action is situated.

## BACKGROUND AND FACTS

7.

Navibuglar is the registered owner of the vessel named the MV Sredna Gora. This vessel received necessaries in the form of stevedoring services from IFG during a period of time from approximately June 22, 2018 to August 5, 2018. The Defendants' interaction and relevance in this case is that, upon information and belief, the Defendant entities are owners and/or agents, masters, charterers, or were otherwise managers of the vessel at the Port of Lake Charles IFG Grain Terminal, who, either individually or collectively operated the vessel to receive the necessary stevedoring services giving rise to this litigation.

8.

Host Agency completed, executed and filed a berth application with the Port of Lake Charles on behalf of the MV Sredna Gora on June 20, 2018 (attached hereto as **Exhibit B**) to load Soybeans and Soybean Meal at the IFG Export Grain Terminal.

9.

Host Agency also completed, executed and filed a Terminal Use Application (TUA) with the Terminal on behalf of the MV Sredna Gora on June 20, 2018 (attached hereto as **Exhibit C**) to load Soybeans and Soybean Meal at the IFG Export Grain Terminal. The TUA specifically states:

> "THE UNDERSIGNED COMPANY, AGENTS FOR THE ABOVE NAMED VESSEL OR BARGE, IN CONSIDERATION OF APPROVAL OF THE APPLICATION, AGREES TO BE BOUND BY ALL THE RULES, REGULATIONS, TERMS, CONDITIONS AND CHARGES AS PUBLISHED IN

THE   IFG   EXPORT   GRAIN   TERMINAL   TARIFF(S),   INCLUDING ACCEPTANCE OF FINANCIAL RESPONSIBILITY THEREFORE."

10.

On June 20, 2018, the Terminal sent an Invoice for various vessel charges to Host Agency in the amount of $80,580.00. Host Agency paid these charges in full by wire transfer on behalf of the vessel on June 21, 2018.

11.

MV Sredna Gora arrived at the Port on June 24, 2018, and commenced loading operations.

12.

On June 28, 2018, a fire occurred at the Terminal ("Incident"). Terminal is fully indemnified and held harmless for such matters as per section (I)(D) of the Terminal Tariff.

13.

Following the June 28, 2018 Incident, the Terminal was congested with vessels waiting to load at the Terminal. It became necessary for the vessels to work overtime to address congestion.

14.

As per section (III)(L) of the Terminal Tariff, the Terminal can (and did) require vessels to work overtime at the expense of vessel. Terminal and vessel worked considerable overtime to complete the loading in accordance with the provisions of the Terminal Tariff.

15.

As per Terminal Tariff, on September 26, 2018, Terminal sent an invoice to Host Agency for overtime charges incurred by the MV Sredna Gora totaling **$570,500.00** (attached hereto as **Exhibit D**).

16.

Although Host Agency initially rejected this invoice on behalf of the vessel on September 27, 2018, it was nevertheless acknowledged that the overtime charges had in fact been incurred. Host Agency then incorrectly claimed that the overtime charges were supposedly the responsibility of another party in a bad faith effort on behalf of it and/or the other named Defendants to evade responsibility for the legitimately incurred overtime charges.

17.

On the same day of September 27, 2018, Terminal responded to Host Agency explaining the specific provisions of the Tariff applicable to the vessel and that the vessel was fully responsible for the overtime charges.

18.

On October 4, 2018, Host Agency again rejected the invoice still erroneously claiming overtime was for the shipper's account "according to the elevator tariff." This stated position is in direct contradiction to the plain language of the Tariff.

19.

To date, the vessel owner, Navibuglar, and its representatives have failed to make payment, either directly or through their agent. Navibuglar and other Defendants have had ample time to address these issues and make timely payment to IFG/Terminal. There is no justifiable, good faith reason to continue to withhold payment.

20.

Attached as **Exhibit E** is an updated invoice which reflects the amount due for overtime plus interest which is accruing. The total amount due as of August 19, 2019 was **$757,053.50**, which amount will continue to accrue interest until paid in full.

21.

Upon information and belief, Defendants may have actively engaged in a shell game and sought to conceal the true nature of the roles of the parties involved by purposefully acting in a substantially misleading and deceptive manner in a bad faith attempt to minimize liability.

**COUNT 1 – BREACH OF CONTRACT CLAIMS**

22.

Defendants are liable to IFG for their breach of contract in failing to pay accrued charges.

23.

As outlined above, the breach of contract and refusal to pay on the part of Defendants' has been done in bad faith, rendering them liable for all damages resulting from their breach, foreseeable or not.

**DAMAGES**

24.

IFG is entitled to damages of at least $757,053.50, plus accrued interest.

25.

IFG may additionally be entitled to costs, consequential damages and/or delay damages and any other remedies available under applicable Louisiana laws.

26.

IFG has additionally put Defendants on notice of its intent to pursue a lien and arrest against the vessel should Defendants continue to act in bad faith in refusing to pay the overtime charges and other related damages. IFG is now seeking said lien given Defendants' total lack of appropriate response to all requests for payment.

### RELIEF REQUESTED

IFG is entitled to the following relief which it respectfully requests this court grant after due proceedings:

a. Declaratory relief finding that the claimed damages are owed pursuant to the agreements of the relevant parties.

b. Money Judgment in favor of Plaintiff, IFG Port Holdings LLC, and against Defendants, Navigation Maritime Bulgare (NAVIBULGAR®), Host Agency, LLC, T. Parker Host, Inc., Luzar LLC, and Luzar Trading SA, in the full and legal sum of $757,053.50, plus interest from August 19, 2019, going forward until paid in full.

c. Other damages as may be appropriate and proven at trial including, but not limited to, consequential damages and/or delay damages and any other remedies available under applicable Louisiana laws; and

d. Costs.

WHEREFORE, IFG PORT HOLDINGS, INC., prays that after due proceedings had, there be judgment herein in favor of Plaintiff and against Defendants, holding them liable jointly, severally, and in solido, for all moneys due.

PRAYS FURTHER for all orders and decrees necessary in the premises and for full, general and equitable relief.

Respectfully submitted,

STOCKWELL, SIEVERT, VICCELLIO,
CLEMENTS & SHADDOCK, L.L.P.

BY: _W. B. Monk_
WILLIAM B. MONK (#09551)
STEPHEN D. POLITO (#32638)
KATHLEEN T. DEANDA (#35746)
127 W. BROAD ST.
CHASE BANK BLDG., 4TH FL.
LAKE CHARLES, LA 70601
PHONE: (337) 436-9491
FAX: (337) 493-7210

*Attorneys for IFG Port Holdings, LLC*

A TRUE COPY
Lake Charles, Louisiana

Deputy Clerk of Court
Calcasieu Parish, Louisiana   OCT 0 7 2019

**Please Serve Defendants:**

a. **Navigation Maritime Bulgare, also known as NAVIBULGAR®**
   Navibulgar House,1, Primorski Boulevard,
   9000 Varna, Bulgaria ,
   to be served under the Long-Arm Statute

b. **Host Agency, LLC**
   through its registered agent for service of process,
   CT Corporations System
   3867 Plaza Tower Drive
   Baton Rouge, Louisiana 70816

c. **T. Parker Host, Inc**.
   through its registered agent for service of process,
   CT Corporations System
   3867 Plaza Tower Drive
   Baton Rouge, Louisiana 70816

d. **Luzar LLC**
   2600 S. Douglas Rd., Suite 713
   Coral Gables, Florida 33134
   to be served under the Long-Arm Statute

e. **Luzar Trading SA**
   Torre Swiss Bank, Piso 2,
   Calle 53 Este, Urb. Marbella
   Panama City, Panama
   to be served under the Long-Arm Statute



# IFG PORT HOLDINGS LLC

# EXPORT GRAIN TERMINAL TARIFF NO.2
# (CANCELS TARIFF NO. 1)

APPLICABLE AT:

IFG EXPORT GRAIN TERMINAL

LOCATED AT

THE PORT OF LAKE CHARLES

EFFECTIVE: MARCH 1, 2017

MAILING ADDRESS:

IFG PORT HOLDINGS LLC
150 Marine Street
Lake Charles, Louisiana 70601

PLEASE NOTE THIS TARIFF MAY BE SUPPLEMENTED AND AMENDED
FROM TIME TO TIME WITHOUT NOTICE.



**EXHIBIT**

**A**



# TABLE OF CONTENTS

## SECTIONS

I. General Rules & Regulations

II. Vessels and Filing

III. Vessel Loading

IV. Schedule of Charges

V. Additional Provisions

VI. Definitions



# SECTION I

# GENERAL RULES AND REGULATIONS

A.   NOTICE TO PUBLIC

This tariff constitutes due notice to the public, to shippers, and to all individuals, including vessel owners and/or operators and/or charterers and/or personnel and/or crewmembers and/or agents and/or managers and/or private carriers or business entities, including all barges, trucks, railroad cars, vessels, watercraft or other means of conveyance and/or equipment used by said individuals or business entities (hereinafter collectively "Users"), which utilize the facilities and/or services of any of IFG PORT HOLDINGS LLC located at the Port of Lake Charles (hereinafter IPH") that the rates, charges, rules and regulations apply to all general traffic without specific notice, quotation to or arrangement with Users (excepting as otherwise specified herein).

B.   NON-LIABILITY OF IPH

IPH shall not be liable for any loss of or damage to grain or to the barges, ships, vessels or other watercraft berthed or in the process of being berthed at or adjacent to the elevator docks/City Docks, berth #8/wharf or to any watercraft or transfer rig, whether caused by frost; heat; flood; rain; the elements and/or any other weather-related condition (including tropical storms, hurricanes and like occurrences); evaporation; natural shrinkage; wastage or decay; insects; birds; rodents and/or other animals; floats, logs and/or pilings; acts of God; strikes; shortage of labor; work stoppages; riots; civil commotion; insurrection; war; acts or failures to act of any governmental entity; acts of terrorism; any consequences arising therefrom; concealed damage, leakage, variation in weights or losses in weight whether occurring while grain is in storage or is being handled, or for failure to detect or remedy same; and/or any causes beyond the control of IPH; and said causes do not interrupt the storage charges or other charges and do not create any liability for failure of discharge of cars, or unloading or loading or any other service that the elevators has undertaken to furnish. In all other matters, IPH shall not be responsible for anything beyond its control, however or whenever arising.

C.   DELAY DAMAGES

IPH will use its best efforts to receive, load, unload, handle or deliver grain, but does not undertake to do so within any particular time period. In furnishing any



services or performing any acts hereunder, IPH shall not be liable for any freight, dispatch, demurrage or other damages for delays to a vessel including standby time or loss of dispatch time or for any other delay damages incurred by any User, for any cause whatsoever, even if such delay is the fault of IPH or its management.

D.   HOLD HARMLESS AND INDEMNIFICATION AGREEMENT

All Users of the IPH elevator facility, specifically and without limitation, agree to hold harmless and indemnify IPH, its parents, subsidiaries, divisions, affiliates and/or joint ventures, and their respective officers, directors, agents and employees and all persons, firms, or other entities which may manage, own, control or operate the elevator facility (hereinafter "Management"), from and against any and all disputes, claims, liability (including but not limited to absolute or strict liability), causes of action, damages (including but not limited to punitive damages), or expense (including but not limited to court costs and reasonable attorneys' fees), in connection with any loss of life, bodily injury, impairment of health and/or damage to or loss of property, directly or indirectly arising out of, related to, and/or resulting from the User's operation at, or use of, the elevator facilities, **even if caused by concurrent negligence of IPH, the unseaworthiness of any vessel, and/or because of any preexisting deficiency or defect, hidden or otherwise, of the elevator facilities,** unless such loss of life, bodily injury, impairment of health and/or damage to or loss of property is caused by the gross negligence or willful or wanton misconduct of Management. All Users of the elevator facility, specifically and without limitation, further agree to hold harmless and indemnify IPH from and against all claims or damages of any nature whatsoever, including but not limited to a transportation security incident, terrorist act, or breach of security, whether or not directly or indirectly arising out of, related to, or resulting from, a crewmember's, stowaway's, asylum-seeker's, passenger's, vessel personnel's or other individual's detention onboard the vessel, escape or egress from the vessel, and/or negligent or intentional torts or criminal acts.

E.   LAW AND JURISDICTION

Any and all disputes, claims, liability (including absolute and strict liability), causes of action, damages (including punitive damages), or expenses (including legal fees, costs and expenses) directly or indirectly arising out of, related to, and/or resulting from the User's presence or operation at, or adjacent to, or use of, the elevator facility, which cannot be resolved amicably, shall be subject to the exclusive jurisdiction of the United States District Court for the Western District of Louisiana. If that court lacks subject matter jurisdiction, then exclusive jurisdiction shall rest with either the Fourteenth (14th) Judicial Court for the



Parish of Calcasieu, State of Louisiana (for disputes involving or related to the IPH elevator facility). Said disputes and/or causes of action shall be resolved under the general maritime law of the United States, in the absence of which Louisiana state law shall apply. In the event that IPH must move to dismiss a lawsuit filed in violation of this provision, the reasonable attorneys' fees and costs incurred by IPH in so moving shall be paid by the plaintiff(s) to said lawsuit. In the event of any legal proceedings to enforce any provision of this tariff, IPH shall be entitled to recover its expenses incurred in such proceedings, including all reasonable attorneys' fees and costs.

F.      REMEDIES FOR ENFORCEMENT OF TARIFF

IPH shall have all remedies available to it at law, in equity and/or under maritime, federal or state law to enforce the rules and regulations of this tariff, including but not limited to canceling a vessel's filing/Application for Berth with the Port of Lake Charles or ordering a vessel from berth # 8 at City Docks. IPH shall also have all remedies available at law, in equity and/or under maritime, federal or state law to collect charges and liquidated damages including but not limited to a maritime lien against the vessel, its cargo, freight and/or sub freight for such charges or liquidated damages. As set forth in Section I, E, above, in the event of any legal proceedings to enforce any provision of this tariff, IPH shall be entitled to recover its expenses incurred in such proceedings, including all reasonable attorneys' fees and costs.

G.      APPLICATION OF RATES

The rates, charges, rules, and regulations set forth in this tariff and any additions, revisions, or supplements thereto, shall apply on grain and/or vessels received at IPH elevators and shall apply to grain on hand at the effective date of this tariff. The inclusion of rates, charges or conditions in this tariff is not to be interpreted as a guarantee that such services can or will be performed but only that such services may be performed at IPH's discretion, as the facilities are equipped or prepared to perform such services.

H.      AMENDMENTS

This Tariff may be amended from time to time without notice.

I.      INTERPRETATION



In all situations described in this tariff in which IPH is empowered to make a determination or act within its discretion, the sole criterion as to the propriety of such actions and determinations shall be whether IPH acted in good faith.

J.     INSURANCE

Insurance on grain stored in an elevator silos will be carried by IPH for the account of the depositor or owner of the warehouse receipt against loss or damage by fire, lightning, tornado, inherent explosion and windstorm for its full value, to the extent that such insurance is procurable and consistent with insurance policy provisions. The cost of this insurance is included in the charges for receiving and shipping grain as set forth herein.

K.     CONTRACTOR'S INSURANCE

Stevedores, security guards, and other contractors and/or subcontractors shall be    required to procure and maintain during the duration of its work at IPH's elevator facilities; minimum insurance as set forth below:

1.   Worker's Compensation (including Longshore and Harbor Workers Compensation Act coverage) as required by state and federal laws, such policy to include voluntary compensation endorsement, Amended to Coverage B-Maritime and Employer's Liability Coverage (including crew coverage) with $1,000,000.00 limits;

2.   Comprehensive general liability (CGL) insurance with the watercraft exclusion deleted, including automobile liability coverage and completed operations coverage with primary limits of $1,000,000.00 per occurrence single limit;

3.   Excess following form CGL insurance with the watercraft exclusion deleted, with limits not less than $5,000,000.00 per occurrence in excess of number two (2), as set forth above;

4.   Where applicable, stevedore's legal liability insurance with $1,000,000.00 per occurrence single limit.

5.   In the event that a U.S. governmental entity mandates that armed security guards be assigned to a vessel prior to berthing or while it is berthed at the IPH elevator facility, IPH requires that the vessel's agent provide it, without any cost to IPH, with a Certificate of Insurance evidencing CGL coverage



with limits of no less than one million dollars ($1,000,000.00) per occurrence for the security firm it has contracted with to provide security services onboard the vessel.

IPH shall be named as an additional assured with a waiver of subrogation in each of the foregoing policies. Each of the foregoing policies shall contain a provision that IPH will receive thirty (30) days' written notice of material changes or cancellation. A current Certificate of Insurance evidencing the above coverage's shall be furnished to IPH prior to the commencement of work at IPH's elevator facilities and will be maintained on file at the IPH office.

L.    SECURITY

In accordance with the Maritime Transportation Security Act of 2002, 46 U.S.C. §§ 70101 et seq., and implementing regulations, 33 C.F.R. §§ 101 et seq., effective July 1, 2004, IPH has implemented certain restrictions, policies and procedures relative to security.

M.    STOWAWAYS, ASYLUM SEEKERS, DETAINEES

Prior to berthing or while at berth at IPH's facility, stowaways, asylum seekers and/or detainees on board the vessel must be removed from the vessel into the custody of U.S. immigration officials, pursuant to 8 U.S.C. §§1321, 1323. Vessels with stowaways on board will not be allowed to berth at any of IPH's facilities. If berthed, at IPH's discretion, such vessel may be ordered to vacate.

N.    INSPECTION AND WEIGHING

Determination and certification of the grain quantity will be performed by personnel of the United States Department of Agriculture at its established rates. The expense of such certification will be borne by the depositor of the grain or the owner of the warehouse receipt. Inbound grain shall be graded by elevator employees licensed under the United States Warehouse Act. Interested parties may elect to have inbound grain officially inspected and graded by Federal Grain Inspection Service personnel at published F.G.I.S. rates. All outbound grain shall be officially graded and weighed when discharged from the elevator by Federal Grain Inspection Service personnel at published F.G.I.S. rates.

O.    SOUND GRAIN ONLY



The SCHEDULE OF CHARGES covers sound grain only. The warehouseman shall not be required to receive for storage or handling grain that is out of condition or becoming so. The storage rate on any such grain, which the warehouseman may agree to receive for storage, will be higher than the rate of storage provided herein, and the exact rate will depend upon the condition of the grain. Grain, though sound when received, which is going out of condition, may be dealt with by IPH in accordance with the regulations issued by the Secretary of Agriculture under and pursuant to the United States Warehouse Act. Charges for services not specifically provided for in the Schedule of Charges and for service with respect to grain other than sound grain will be furnished upon application or after receipt of grain, and will be commensurate with the extent and nature of the work involved. All loss or shrinkage in handling will be for the account of the depositor or owner of the warehouse receipt.

P.   FLAX

Flax shall be stored hereunder only upon a gross bushel basis and IPH shall not be responsible for decrease in the number of net bushels and increase in dockage due to handling. Flax shall be stored on Identity Preserved basis only.

Q.   MEAL AND PELLETS

Meals and Pellets will ordinarily be handled only for direct transfer to vessel and any loss or shrinkage in handling will be for the account of the depositor or owner of the warehouse receipt.

R.   PREFERENTIAL UNLOADING & LOADING

In the event of congestion of railcars, barges or vessels, IPH reserves the right, without liability for loss, damage or demurrage to unload or load those railcars, barges or vessels for which outward shipping space has been engaged and is available.

S.   RIGHT TO REFUSE GRAIN

IPH reserves the right, without any responsibility for any loss, damage, or demurrage that may arise, to refuse any grain which is, in their opinion, not merchantable or in unfit condition for storage, transfer or handling.

T.   OWNERSHIP & GRADE

Grain will be stored in silos containing the same kind and grade of grain



regardless of ownership. If the owner of the grain requires storage on an "Identity Preserved" basis, a special agreement must be requested in advance from IPH for storage in special silos. The rates and charges for such a special agreement shall be agreed between the parties.

U.    TYPE OF RAILCARS

Railcars (other than ordinary hopper-cars) will be loaded or unloaded by the IPH by special agreement made prior to receipt of the rail car.

V.    TRANSFERS

Grain will be transferred from bin to bin whenever, in the opinion of IPH, such action is necessary to obtain the benefit of full storage capacity of the elevator facility.

V.    STORAGE

Storage charges shall commence on the seventh (7) day after the date of deposit of the grain and shall accrue to and include the first business day upon which all of the following have been done:

1.    The warehouse receipt or receipts have been surrendered, properly endorsed for cancellation and accompanied by tender of all charges due and written instructions covering shipping and loading.

2.    Vessels, or barges, chartered by the owner of the warehouse receipt or receipts, have been spotted at City Docks, berth# 8; and

3.    The grain represented by such warehouse receipt or receipts has been loaded out of the elevator facility by IPH with due diligence, provided, however that notwithstanding performance of acts (1) and (2) immediately above by the owner of the warehouse receipt or receipts, IPH shall not be obligated to load out grain nor shall storage charges terminate if, despite the exercise of due diligence, IPH is prevented from loading grain by strikes, work stoppages, riots, civil commotion, war, floods, the elements and/or any weather condition (including tropical storms, hurricanes and like occurrences), Acts of God, acts of government, or causes beyond the control of the warehouseman. If IPH shall fail to exercise due diligence in the loading of any such grain, storage charges shall accrue only to and including the first business day upon which all above requirements have been met by owner of the warehouse receipt or receipts.



X.    GRAIN BREAKAGE

The warehouseman will seek to minimize grain breakage as a result of repeated handlings but will in no way assume any liability for any breakage.

Y.    SALVAGED GRAIN

Unmerchantable or salvaged grain will be accepted if, in the opinion of IPH, such grain can be handled through the elevator facility. Actual condition of the grain will determine charges which will be fixed by IPH. In all instances, the elevation charge and actual loss in weight will be charged against the owner of the grain.

Z.    SHIPPING ORDER

Shipping order will not be consummated until surrender of warehouse receipts, properly endorsed, and in an amount proportionate to or in excess of, but not less than, the quantity, as well as the quality of each of the different grades of grain needed to effect such shipment. Orders for shipment issued to the elevator, prior to issuance of warehouse receipts, must be accompanied by a release signed by the transportation company which carried the grain to the elevator. Release must state that the original lading has been surrendered and all charges have been paid. Release must cover the total amount of each grade and identical class and color of grain ordered shipped out of the elevator.

AA.    WAREHOUSE CHARGES

Charges for storage and elevation shall become due and payable not later than upon surrender of the grain by the warehouseman. Charges for other services shall be due and payable upon performance of the service by the warehouseman. Warehouseman reserves the right to require prepayment of any charges specified in this tariff, when warehouseman's lien is or may be ineffective.

BB.    BASIS OF CHARGES

Charges on grain received or unloaded into the warehouse: the gross in



weight shall be used in assessing elevation, cleaning and storage charges. The gross outturn weight of grain shall be the basis for the assessment of handling and loading out charges.

CC.    RIGHT TO CONTRACT WITH THE GOVERNMENT

IPH may enter into contracts in writing with the United States of America or any agency thereof, providing for storage and service rates other than storage and service rates provided herein, applicable only to grain, or a commodity defined in any such contract as grain, in which the United States of America or the agency thereof contracting with the undersigned warehouseman as aforesaid, has an interest.

DD.    LICENSED UNDER U.S. WAREHOUSE ACT

These warehouses are operated as public warehouses licensed under the United States Warehouse Act. This tariff is subject to the regulations of Grain Warehouseman promulgated by the Secretary of Agriculture under and pursuant to said United States Warehouse Acts. All grain received is considered as deposited for storage under said United States Warehouse Act and regulations thereunder unless the owner of the grain or his agent requests otherwise at or prior to the time of its receipt and subject to agreement of IPH.

EE.    FUMIGATION OF GRAIN

In connection with the fumigation of grain, IPH, at its option, may perform or contract for fumigation at the expense of the owner or consignee of the grain. With respect to fumigation, the owner or consignee of the grain shall ensure that all safety precautions have been taken to permit safe fumigation services. Right is reserved by elevator management to refuse to unload grain infested by weevils or other insects or, to refuse to unload such grain until grain has been fumigated to the satisfaction of elevator management and a gas free certificate issued. Should any owner or consignee refuse to allow fumigation to be conducted in accordance with procedures set forth in the U.S. Coast Guard and Federal Grain Inspection Service or other governmental regulations, the owner or consignee shall be responsible for any and all delays, resulting costs, damages, and expenses (including legal fees, costs, and expenses). Any crew member(s) or other personnel wishing to vacate the vessel or watercraft while fumigation takes place may do so at the expense of the owner or consignee.



FF.   RIGHT TO TERMINATE STORAGE

IPH reserves the right to terminate storage and to order the removal of any grain which from its inherent nature or otherwise may, in the judgment of IPH, cause damage to other grain or become offensive to the premises. Such grain not removed by owner within the time specified in the notice to remove may be removed by IPH at the expense of the owner or consignee.


# SECTION II

## VESSELS AND FILING

A.   SAFE ACCESS

All vessels are to furnish at all times while in berth, safe access onboard in accordance with United States Department of Labor and/or United States Coast Guard and/or Federal Grain Inspection Service standards ("safe access"). Any delay (including Federal Grain Inspection Service final inspection delays) resulting by failing to furnish safe access aboard, the vessel will be charged $5,000.00 per hour or fraction thereof until approved safe access is provided.


B.   ELEVATOR OVERTIME

All rates set forth in this tariff, for services involving labor are based upon payment of labor at basic straight time wages. Overtime involved in the loading of ocean vessels will be assessed the vessel at the rates provided in this tariff.


C.   COMMON CARRIERS

Common carriers by water (usually referred to as liners), as defined by the Shipping Act of 1984, as amended by the Ocean Shipping Reform Act, will not be accepted for loading at IPH's elevator facility. According to section 3(6) of the Shipping Act, a common carrier is "a person holding itself out to the general public to provide transportation by water of passengers or cargo between the United States and a foreign country ..., except that the term does not include a common carrier engaged in ocean transportation by ... ocean tramp ..."



D.   FILING TERMINAL USE APPLICATION

Users intending to load at any of the IPH elevators shall file a Terminal Use Application at IPH located at 150 Marine Street, Lake Charles, Louisiana 70601 between the hours of 9:00 a.m. and 4:00 p.m. on Monday thru Friday and the hours of 9:00 a.m. and 12:00 noon on Saturday, all exclusive of any holiday defined herein.

**The signed Terminal Use Application, when received by the elevator with delivery of other documents set out in this paragraph II. D, and/or the use of the facilities and services, shall constitute a contract between IPH and the vessel and the User to abide by the rules and regulations of and to be jointly and severally liable for the charges of whatsoever kind or nature in this tariff and for any liabilities arising therefrom. All charges incurred by the vessel and Users, as set forth in this tariff, shall be the responsibility of and payable by the representative of the vessel and/or User that files the Terminal Use Application. Moreover, by signing and delivering the Terminal Use Application, the vessel and Users represent that: (1) they have appropriate insurance to cover damages associated with or resulting from a transportation security incident and/or terrorist act; 2) the User has appropriate insurance coverage to cover the full value of the grain being handled at the elevator and (3) the vessel is not a common carrier, as that term is defined by the Shipping Act of 1984, as amended by the Ocean Shipping Reform Act.**

By filing an Terminal Use Application, vessel owners/operators and/or User agree to work overtime if required by the elevator or to vacate the berth assigned if ordered by the elevator.

The following certificates, documents, and deposits must be presented in person at the IPH elevator facility at the Lake Charles administration office at 150 Marine Street, Lake Charles, LA 70601. No facsimile transmissions will be accepted for any documents, certificates, or deposits. The filing will be acknowledged on the later of the expiration of buyer's written ten-day pre-advice, or the first day of shipment specified in the contract. The vessel must be available to berth when the following documents are accepted:

1.  Application for Berth filed with the Port of Lake Charles signed by the Master of the Vessel, sealed with the vessel's seal and also signed by an authorized representative of vessel owner.

2.  Copies of Stowage Examination Certificate issued by the U.S.D.A., Federal Grain Inspection Service certifying that all cargo compartments are free of insect infestation and objectionable odor, and are clean and dry and fit for the cargo. The Stowage Examination Certificate must not be dated more than five (5) days prior to the filing and



acknowledgement of the Application of Berth.

3.   Copy of Certificate of Readiness as to all compartments, issued by a local representative of the National Cargo Bureau, Inc.

4.   Copy of the Original Notice of Readiness signed by the Charterer or agent of the Charterers showing when vessel has been accepted.

5.   Master's proposed stowage plan which includes grain cubic's of the vessel.

6.   All tankers and OBO class vessels must show a gas free certificate showing completely free of petroleum odor or any other objectionable odors.

7.   If any trimming other than spout trimming is required, or requested, the elevator management must be notified in writing and must approve in writing. Hand trimming is not permitted. In addition, if a vessel must trim, the vessel must furnish gear on board to hold the trimming machines. In the event the vessel is gearless, vessel must furnish a floating derrick, at vessel's expense, to hold the trimming machine.

8.   Copy of the vessel's International Tonnage Certificate or U.S. Customs Form 1301 showing the vessel's Gross Tonnage.

9.   Deposit of funds, suitable to IPH management, covering all estimated charges that are anticipated to be incurred by the User and the vessel.

Except as otherwise provided in these regulations, vessels shall be permitted to berth in the order in which they file with the elevator office, a signed Terminal Use Application, accompanied by the documents listed above. The elevator management, in its sole discretion, may alter the turn of the vessels to be loaded when in its judgment; it would be in the best interests of elevator operations.

E.   NO LIABILITY FOR FREIGHT

Unless otherwise agreed in writing, filing of an Application for Berth and/or a Terminal Use Application shall constitute a waiver by the vessel of any and all claims against IPH, its parent companies and its subsidiary and affiliated companies for freight or other charges for cargo.

F.   REINSPECTION REQUIREMENT

IFG PORT HOLDINGS LLC — Tariff No. 2  FINAL – March 1, 2017



If a vessel has to wait for loading berth at the elevator in excess of five (5) days from the time the original U.S.D.A., Federal Grain Inspection Service pass was issued, the vessel must re inspect and be passed entirely by the U.S.D.A., Federal Grain Inspection Service. At elevator management's discretion, the vessel will not be ordered to berth until in compliance with this regulation.

G.    REFILING

If a vessel that is filed with the elevator, is ordered to the berth but, is unable or refuses to accept a loading berth, due to any reason whatsoever, or otherwise fails to comply with this tariff, the elevator management may, at its sole discretion, cancel the original filing. If the filing is cancelled, the vessel must then re-file and will be assigned a rotation in the elevator line up based upon the new filing time.

H.    CLOSEST AVAILABLE ANCHORAGE

Vessels filing an Application for Berth with the Port of Lake Charles to load at the IPH elevator facility will be required to anchor at Port of Lake Charles at the closest available berth or anchorage to the City Docks, berth #8. In the event a vessel fails to comply with this requirement and another vessel or vessels, although filed later, are anchored at an anchorage closer to the City Docks, berth # 8 than the subject vessel, IPH may, at the discretion of the IPH management, by-pass the vessel failing to comply with this requirement, if in the IPH management's judgment, loss of berth time may be avoided thereby. If the vessel is ordered to berth and does not arrive within two (2) hours from the time of such order due to circumstances or conditions within the control or due to the fault of the vessel, its owner/s, operator/s, charterer/s, agent/s or employees, the vessel, its owner/s, operator/s, charterer/s, and/or agent/s shall be jointly and severally liable for a dead berth charge of $7,500.00 for each hour or fraction thereof until the vessel is berthed, regardless of intervening circumstances of any nature. Such charge shall be assessed as liquidated damages.

I.    BERTHING PRIOR TO CERTIFICATION

At the sole discretion of the Port of Lake Charles and IPH, a vessel may be allowed to tie up at the berth prior to having received all the required certificates to file with the elevator. If a vessel fails to supply such certificates prior to loading, it must vacate the berth within one (1) hour of being ordered to do so by IPH. Should such vessel fail or decline to vacate the berth within one (1) hour after arrival of the tugs, linesmen and pilot and no more than four (4) hours after receipt



of verbal notice to vacate by IPH management, then such vessel shall be subject to liquidated damages at a rate of $7,500.00 for each hour or fraction thereof commencing four (4) hours after receipt of the notice to vacate until vessel vacates berth, regardless of any intervening circumstances of any nature. Any vessel so ordered to vacate the berth will return to berth after the vessel loading immediately thereafter, if any, completes loading or vacates the berth for other reasons, provided that the circumstances requiring the vessel to vacate are rectified.

J.    SHIPHOLD FUMIGATION

The User and/or owners/operators of a vessel presenting an Application for Berth and/or a Terminal Use Application to load at the IPH elevator facility thereby authorize ship hold fumigation in accordance with applicable U.S. Coast Guard and Federal Grain Inspection Service regulations and instructions and insure that the vessel is fit for such fumigation. Should any vessel refuse to allow ship hold fumigation to be conducted in accordance with procedures set forth in the United States Coast Guard and Federal Grain Inspection Service regulations or instructions, the owners/operators of the vessel shall be responsible for any and all delays, resulting costs, damages, and expenses. Any crew member/s wishing to vacate the vessel while fumigation takes place will do so at the expense of the vessel's owners/operators. All such fumigation shall be at the sole cost of User and/or owners/operators of vessel.

## SECTION III

## VESSEL LOADING

A.    OFFICERS AND CREW MEMBERS REQUIRED

Upon berthing, the vessel shall immediately and at all times, provide adequate lighting equipment, and appropriate officers and crew on board to ensure that the vessel is properly secured at all times and to permit reception of cargo at any time of the day or night, Including Saturdays, Sundays and holidays.

B.    FINAL INSPECTIONS

All vessels loading grain at IPH elevators are subject to U.S.D.A. regulations.



The regulations require all vessels to be inspected by their inspection departments pursuant to the United States Grain Standards Act just prior to loading alongside a wharf and this inspection is considered the final inspection prior to the vessel receiving grain. All inspections prior to this final inspection are classed as preliminary inspections. If a vessel is turned down for any reason at the time of "final inspection" alongside the wharf, such vessel must immediately vacate the berth on instructions from the elevator management. If the vessel refuses or fails to vacate the berth within four (4) hours of receipt of the notice to vacate, IPH shall be entitled to charge and recover as liquidated damages the sum of $7,500.00 per hour for each hour or fraction thereof, commencing four (4) hours after receipt of the notice to vacate until vessel leaves the berth. If the cause for rejection is rectified and the vessel is re inspected and passed within twenty-four (24) hours from time of rejection, it will receive the next available berth. If such rectification and re inspection takes more than twenty-four (24) hours, the vessel must re-file with the elevator and take a position in the elevator line-up based upon the new filing time.

C.   LINE HANDLING

Arrangements for the berthing of vessels are to be completed well in advance of the vessel's arrival at the elevator facility for physical berthing. The vessel and its agent shall be fully responsible for making arrangements for line handling and should make direct contact with the stevedore responsible for loading the vessel. The vessel and its agent shall be invoiced for the stevedores services and each shall be jointly and severally liable for the charge for such services, which shall give rise to a maritime lien.
Should the vessel and its agent wish to select another entity for line handling, such entity must be approved in writing by IPH management prior to the filing of the Application for Berth and/or the Terminal Use Application.

D.   DROPPING ANCHOR

The vessel must seek the consent of the pilot and/or the Port of Lake Charles in order to drop anchor while in berth.

E.   CONTINUOUS READINESS AND FAILURE TO VACATE

Assignment of berth is predicated upon vessel's continuous readiness to receive grain at a full normal rate throughout the entire time in berth. Should a vessel, while in berth, fail to maintain such readiness, the vessel shall vacate the berth when so ordered by elevator management. Whenever a vessel is unable or refuses to load, for any reason whatsoever, the elevator



management may order the vessel to vacate the berth. The vessel must vacate the berth within four (4) hours of notice to vacate being given to the vessel and or agents. If the vessel fails or refuses to vacate when so ordered, IPH shall be entitled to charge and recover as liquidated damages the sum of $7,500.00 per hour for each hour or fraction thereof commencing four hours after receipt of the notice to vacate until vessel leaves berth regardless of intervening circumstances of any nature.

F.   LOADING DELAYS

If at any time a ship stops or delays the elevator vessel loading operations for any reason, whether caused by the ship or otherwise, except for cases caused by the elevator's inability to load, a dockage charge of $7,500.00 per hour, or fraction thereof, shall be assessed against the vessel, its Owner/s, Operator/s, Charterer/s, and/or Agent/s, as liquidated damages, in addition to any other charges within this tariff.

G.   INABILITY TO RECEIVE GRAIN

During the course of loading operations, should the loading cease or be interrupted due to an objectionable odor emanating from the vessel compartments or any other reason attributable to the condition of the vessel or its suitability to receive grain, the Owner/s, Operator/s, Charterer/s, Master, and/or Agent/s shall upon request of the elevator management immediately:

1.   Acknowledge receipt of the cargo received on board by signing an original official ship receipt.

2.   Remove the vessel from the loading berth at the owners' expense.

H.   VACATING BERTH UPON COMPLETION OF LOADING

Vessel shall vacate the berth within one (1) hour of completion of loading. If the vessel refuses or fails to vacate the berth within one (1) hour after loading is complete; IPH shall be entitled to charge and recover as liquidated damages, the sum of $7,500.00 per hour for each hour or fraction thereof, regardless of any intervening circumstances of any nature, until the vessel sails from berth. If the vessel does not timely vacate the elevator berth the vessel, its Owner/s, Operator/s, Charterer/s, and Agent's shall be jointly and severally liable for all costs and expenses (including attorneys' fees) incurred in moving the vessel, in addition

IFG PORT HOLDINGS LLC — Tariff No. 2  FINAL – March 1, 2017



to the liquidated damages described above. Any such movement of the vessel shall be at the risk of the vessel, its Owner/s, Operator/s, Charterer/s, and Agent/s.

I.   SEAWORTHY TRIM

The Users of IPH's elevator facilities must insure that a vessel accepted for berth must insure that the vessel will be loaded so that she remains in safe seaworthy trim throughout the loading operation to permit shifting out of berth, should it become necessary due to any reason whatsoever.

J.   SPECIAL WEATHER CONDITIONS

If in the opinion of the elevator management, the weather or other river conditions so warrant, any vessel in berth may be ordered at anytime of the day or night, to vacate said berth and anchor in the approved anchorage area until such time as weather conditions permit the vessel to return to berth. Appropriate officers and crew shall be maintained aboard for this purpose.

K.   REQUESTING OVERTIME

Requests originating from the vessel for overtime work must be made in writing to the elevator management prior to 1:00 p.m. of the straight time working day preceding the overtime period. Loading vessels on overtime will be performed only at the discretion of the elevator management and the charges shall be assessed against the party ordering the overtime work except as provided below.

L.   OVERTIME REQUIRED

In order to expedite the movement of vessels and to secure the fullest possible use of the elevator's handling facilities, whenever there are more vessels in port awaiting loading than can be accommodated at the elevator or whenever the elevators are threatened with congestion, *the* vessel occupying the berth shall within the sole judgment and discretion of the elevator management, be required to work overtime at the expense of vessel. By filing an Application for Berth and/or a Terminal Use Application, the vessel and/or owner/s and/or operator/s and/or agent agrees either to work overtime if required by the elevator or to vacate the berth assigned if ordered by the elevator. Should any vessel refuse to work overtime when required, it shall lose its turn and vacate the berth in favor of the next vessel that is willing to continuously work overtime, which vessel shall retain the berth so long as it is willing to work successive straight time and



overtime periods until loading is completed. The vessel so losing its turn shall forfeit its berth assignment and shall be entitled to the berth first available thereafter, subject to the same overtime provisions set forth above, if the circumstances requiring overtime work are then found to still exist in the opinion of the elevator management.

M.   ALTER TURN

IPH, in its sole discretion, may alter the turn of vessels to be loaded when, in its judgment, such actions are justified to avoid overall delays or to permit the best possible service of all Users, or for other reasons considered sufficient in its judgment.

N.   SHIFTING COSTS

Shifting costs for coming in and out of berth or shifting while in berth, shall always be at the sole expense of the vessel and/or its owners/operators.

O.   BAGGING, STRAPPING & BUNDLING

When bagging, strapping, or bundling is necessary, a vessel may, at the discretion of the elevator management, be ordered to vacate the berth at the expense of the vessel and/or its owners/operator.

P.   BLOWING TUBES

Vessels shall not "blow out their tubes" in the vicinity of the elevator dock. A fine in accordance with the provisions of local ordinances shall be levied against any vessel and its owners/operators violating this rule. In addition to the above fine, the vessel and its owners/operators agree to hold harmless, indemnify, and reimburse IPH for and against any claim, suit, or loss IPH may suffer as the result of such violation.

Q.   DISCHARGING BALLAST

Should a vessel loading grain at any of the IPH elevators find it necessary to discharge ballast, such discharging MUST planned sufficiently in advance so that



loading and completion will not be delayed. If any such loading delays resulting from discharge of ballast occur, $7,500.00 for each hour of loading delay, or fraction thereof, shall be assessed against the vessel and/or its owners/operators, as liquidated damages, in addition to any other charges within this tariff.

R.   DRAFT CHECKS

Each vessel loading at IPH's elevator facilities will be allowed one (1) fifteen minute period for the purpose of checking draft and stability calculations in order to determine vessel's final cargo requirements and loading sequence. Any delay in excess of the one (1) fifteen minute period used by the vessel will be charged to the vessel at the rate of $500.00 for each additional fifteen minute period or fraction thereof.

S.   CONTINUOUS NATURE OF CHARGES

At any time that a $7,500.00 per hour charge is assessed for the reasons mentioned in this tariff, that charge shall be assessed continuously until the vessel vacates the berth, regardless of intervening circumstances. Said charge represents liquidated damages and is a reasonable estimate of what the actual damages are, and is not in any way to be construed as a penalty.

T.    TUG ASSISTANCE

All tug service to be used by vessels entering (docking), leaving (undocking), shifting while in berth (warping) or while lying at the berth shall be provided by and must be arranged through IPH's designated tug assist provider company. Vessel agents will be responsible for ordering tug service from the tug assist provider company designated by IPH.

Every vessel upon entering the berth (docking), leaving the berth (undocking), shifting while in berth (warping), or lying at the berth, shall be required to make use of a sufficient number of tugs at the vessel's risk and expense. The number of tugs used shall be at the discretion of the vessel and/or pilot.

Rates for tug service assigned by IPH shall be those listed in Section IV.N below. All vessels are required to deposit in advance funds with IPH to cover the use of tugs for entering the berth and leaving the berth as well as funds to cover any additional anticipated tug usage. IPH shall require a deposit of funds to cover additional anticipated tug usage from time to time as conditions warrant. Funds must be deposited upon or prior to filing of an Application for Berth and/or the Terminal Use Application and IPH will return any amount of the deposit in excess of actual usage by the vessel.



U.     REPAIRS IN BERTH

There shall be no work or repairs of any nature to a vessel in berth when
such work or repair involves welding, burning, scraping, or any "hot work,"
nor any work or repairs where there is a possibility of flame or sparks unless
prior express written approval is obtained from the Port of Lake Charles and
IPH.

V.     BUNKERS

Vessels will be allowed to take on bunkers while in berth with the consent of the
Port of Lake Charles and IPH. IPH will charge a fee of $1,500 if a vessel takes on
bunkers while in berth.

W.     ABUSIVE USE OF EQUIPMENT

Abusive use of elevator owned equipment, including but not limited to trimming
machines, spouts, spout extensions, lines, and winches will not be tolerated. A
fine commensurate with the extent and nature of the damage will be levied
against the vessel and its owners/operators for such abusive use of equipment.


## SECTION IV

## SCHEDULE OF CHARGES

IPH specifically reserves the right to demand payment of charges in advance or to
require posting of a bond to secure payment of charges. There shall be deposited
with the IPH management, contemporaneous with the filing of a Terminal Use
Application, a sum determined by IPH management to approximate estimated
charges in accordance with the terms of this tariff. If such prior deposit is not made,
IPH reserves the right to loading or continued loading of a vessel and to suspend
running of lay time until such time as deposit is made.


A.     RECEIVING                                                PER BUSHEL

    1.  Wheat by hopper rail car or truck              11 cents
    2.  All meals and pellets and flax by rail          by arrangement only


IFG PORT HOLDINGS LLC — Tariff No. 2 FINAL – March 1, 2017



        3.  All other grain                  by arrangement only

An additional inbound weighing charge will be assessed to the shipper as follows:

Rail Cars: Batch weighed $30.00 per car in units of four (4) or more cars
Rail Cars: Single weights $45.00 per car on single cars and units under four (4) cars

B.      SHIPPING

        1.  Wheat                                     11 cents
        2.  All meal and pellets and flax      by arrangement only
        3.  All other grain                  by arrangement only

As to all grain loaded out of the warehouse into vessels, there shall be additional charges, payable by the vessel, for stevedoring services.

C.      STORAGE [per day after expiration of seven (7) days free time]

        1.  All wheat (on inventory as of 8:00 a.m.)      3/10 cent per bu./per day
        2.  All meals, pellets and flax             by arrangement only
        3.  All other grain                    by arrangement only
        4.  Preserving identity by storing in special bins      by arrangement only

D.      SPECIAL SERVICES

<u>Conditioning</u>. Cost for cleaning, fumigation, screening, cooling, running, turning, treating and drying will be quoted upon request. All loss or shrinkage resulting from any conditioning listed above will be for the account of the depositor or owner of the warehouse receipt.

<u>Combination Cargoes</u>. Any vessel receiving multiple products of different types or qualities which are loaded in to separate vessel holds to preserve their identity will be assessed a charge of $5,500.00 per product or per quality.

E.      POTABLE WATER

Water will be supplied from dockside connections at master's request when available by arrangement only. IPH assumes no liability the supply of water or for the quality of the water.

F.      ELEVATOR OVERTIME: All elevator overtime is subject to a minimum of four (4) hours at the following rates:



Monday through Friday ......................................... $1,500.00 per hour
All day on Saturday ............................................ $1,700.00 per hour
All day on Sunday and Holidays ............................. $1,800.00 per hour

G.    DOCKAGE

Dockage will be assessed and collected by the Lake Charles Harbor & Terminal
District in accordance with its tariff published at www.portlc.com.

H.    FACILITY CHARGES

Facility Charges are based on per metric ton (2,204.6):

| Vessel | Grain | Meal/Pellets |
|---|---|---|
| 1. Bulk Carrier Vessel | 65 cents | 75 cents |
| 2. Tanker [subject to IPH approval] | 65 cents | 75 cents |

I.    CLEAN UP CHARGES

Each vessel will be charged $1,000.00 for clean up on berth/dock/wharf.

J.    DUST ARRESTING TARPAULINS

Each vessel will be charged $1,000.00 for use of dust arresting tarpaulins, subject
to availability of tarpaulins.

K.    TRIMMING

Spoon Trimming            $3,000 per vessel hold

All other trimming        Quoted by special arraignment

An advance payment will be charged based on the number of holds upon vessel
nomination.

PONTOON HATCHES

Any vessel having pontoon hatch covers shall be assessed $2.50 per metric

IFG PORT HOLDINGS LLC — Tariff No. 2  FINAL – March 1, 2017



ton of cargo loaded. This charge shall be in addition to any and all other charges contained in this tariff.

L.   LINE HANDLING

Vessels and their agents shall be charged for line handling services by the line handling company designated by IPH and invoiced at the rate of $1,500.00 per handling. If a buoy is used for a vessel, vessels and their agents shall be charged for line handling and invoiced at the rate of $3,000.00 per handling. Any vessel which line shifts from another berth to berth # 8 will only be permitted to do so upon approval of the Port of Lake Charles and/or the pilots. Any damage resulting to any property of the Port of Lake Charles or IPH as a result of such line shifting will be the sole responsibility of the vessel and the vessel agent. Any vessel which line shifts from another berth to berth # 8 will be assessed a charge of $3,500.00 plus applicable line shifting charges, due and payable in advance.

Standby time shall be charged and invoiced at $400.00 per hour.

M.   RATES FOR TUG SERVICE The rates charged per tug for docking, shifting and undocking are available by contacting IPH. Other tug services, including without limitation standby, hold-in, fuel, fuel surcharges, reporting, cancellation, dead ship, or tug security fees shall be invoiced and collected at the current charges and rates set forth by IPH's designated tug assist provider company. IPH reserves the right to invoice and collect a fuel surcharge as established by IPH's designated tug assist provider company.

N.   CARGO SECURITY, AGENCY, VESSEL INSPECTION AND DOCUMENTATION FEES

Due to costs and expenses associated with the implementation of and compliance with the Maritime Transportation Security Act of 2002, 46 U.S.C. §§ 70101 et seq., and implementing regulations, 33 C.F.R. §§ 101 et seq., effective July 1, 2004, each vessel calling at any of the IPH elevators shall be assessed a cargo security fee of $0.45 per metric ton, due and payable in advance.

Vessels and their agents shall be charged an agency fee of $5,000.00 per vessel which will cover the first 4 days of the vessel while the vessel is in berth. A charge of $400.00 per day, or a fraction thereof, will be charged for each day commencing on the fifth day.

All vessels will be subject to examination by the United States Department of Agriculture (USDA) and the National Cargo Bureau, Inc. (NCB). IPH may elect to schedule all such USDA and NCB examinations. To the extent IPH elects to



schedule all such USDA and NCB examinations they will be scheduled during daylight hours only, provided that the vessel is in berth or layberth and ready in all respects for such examinations which will be determined at the discretion of IPH. To the extent IPH elects to schedule USDA and NCB inspections, IPH will collect from vessel and vessel agent a charge of $5,500.00 per inspection for scheduling services and for the cost of both USDA and NCB examinations, due and payable in advance. Any additional examinations due to failure of the vessel by the USDA and/or NCB will result in an additional charge of $5,500.00 for scheduling services and the cost of additional examinations. Vessel stability, vessel cleanliness, timeliness of any inspections and final certificate of loading will be the sole responsibility of vessel or vessel agent. Any vessels which do not pass USDA or NCB examinations of ALL vessel holds will be subject to reexamination at the next available time and/or date provided by the USDA and/or NCB. Any vessel which fails a USDA and/or NCB examination will be subject to other terms and conditions in this tariff. A document facilitation fee of $500.00 payable to IPH will be assessed, in advance, for facilitation of U.S. Customs and Border Protection (CBP) and U.S. Coast Guard security documents needed by each vessel. In addition a document facilitation fee of $500.00 payable to IPH will be assessed, in advance, for facilitation of manifest documents relating to CBP.

O.   PAYMENT OF INVOICES

All invoices for charges are due and payable at the IPH administrative office in Lake Charles, Louisiana or as per the instructions indicated on the invoice, upon presentation. Failure to pay when presented shall cause the name of the User to be placed on a delinquency list. At the discretion of the IPH management, the User appearing on the delinquency list may be denied further use of the elevator facility.

Any payment received may be applied in whole or in part against the oldest invoices rendered to the User. Invoices not paid within fifteen (15) days net due period will be assessed a 1.5 percent service charge per fifteen (15) day period or fraction thereof.


## SECTION V

## ADDITIONAL PROVISIONS


A.   SEVERABILITY

If any term(s) or provision(s) contained herein shall for any reason be held invalid, illegal, or unenforceable in any respect, under any present or future law, such invalidity, illegality, or unenforceability shall not affect any other



provision of this tariff, but this tariff shall be construed as if such invalid, illegal, or unenforceable provision had not been contained therein.

B.   TIME OF THE ESSENCE

Time is of the essence in the performance of each and every obligation or provision under this tariff.

C.   WAIVERS

No waiver of any breach, term, or condition of this tariff by IPH shall constitute a subsequent or continuing waiver of that breach, term, or condition. No failure or delay in exercising any right, power, or privilege in this tariff shall operate as a waiver. Any waiver provided is effective only as the specific breach, term, condition, right, power, or privilege being waived, and no other.

D.   CAPTIONS

All captions and headings in this tariff are for reference and convenience only and shall not modify or affect the provisions of this tariff in any manner.

**SECTION VI**

**DEFINITIONS**

THE FOLLOWING TERMS WHEN USED IN THIS TARIFF SHALL MEAN:

**IPH:** Specifically, but without limitation, the management and elevator facilities of IFG Port Holdings LLC located at the City Docks, Port of Lake Charles.

**BERTH:** That section of the City Docks area of the Port of Lake Charles which is berth # 8, including all berthing facilities, used by a vessel while docking, shifting or undocking.

**DAY:** Unless otherwise specified, a day shall be considered as a twenty four hour period or fraction thereof beginning at 12:00:01 a.m.

**DOCKAGE:** The charge assessed against the vessel for berthing at a berth or dock by the Lake Charles Harbor & Terminal District in accordance with their port tariff available

IFG PORT HOLDINGS LLC — Tariff No. 2  FINAL – March 1, 2017



at www.portlc.com.

**ELEVATOR(S) OR ELEVATOR FACILITIES:** The physical property, i.e. shore side and landside grain export facilities, including but not limited to rail unloaders, concrete silos, conveyors, steel shipping galleries, shiploader, spouts, and ship docks, located at:

> IFG PORT HOLDINGS LLC
> Lake Charles Harbor and Terminal District, City Docks
> 150 Marine Street, Lake Charles, Louisiana 70601

**ELEVATOR OVERTIME:** Operation during overtime hours. Any vessel arriving at any IPH facility during what is considered overtime hours will be accessed overtime if applicable at first line to dock. The vessel and/or agent will be charged elevator overtime continuously until last line away from dock. Fractions of whole hour will be determined by the elevator management.

**GRAIN:** The term "grain" shall include wheat, corn, rough rice, milled rice, oats, barley, rye, grain sorghum, soybeans, canola, rapeseed, peas, beans, lentils, flaxseed, and any other grain for which standards may be established under provisions of the United States Grain Standards Act.

**HOLIDAYS:**

| | |
|---|---|
| New Years Day | All Saints Day |
| Mardi Gras Day | Thanksgiving Day |
| Good Friday | Acadian Day (Friday after Thanksgiving) |
| Memorial Day | Christmas Eve Day |
| July 4th | Christmas Day |
| Labor Day | New Year's Eve Day |

And any other day that shall be ordered or proclaimed as a holiday by the governments of the United States or the State of Louisiana. Should any of the above fall on a Saturday, the previous Friday will also be observed as the holiday. For any holiday falling on a Sunday, the following Monday will also be observed as a holiday. When December 24th and December 31st, fall on Sunday, this holiday will also be observed on the previous Saturday.

**STRAIGHT TIME HOURS:** Those hours of work when labor is paid at basic straight time wage rates; namely 8:00 a.m. to 4:00 p.m.; Monday through Friday, except for holidays.

IFG PORT HOLDINGS LLC — Tariff No. 2  FINAL – March 1, 2017



**OVERTIME HOURS:** Hours of work performed on Saturday, Sunday and Holidays, or before 8:00 a.m. and after 4:00 p.m. Monday through Friday.

**LOADING/ UNLOADING:** The service of loading or unloading grain between any place in the terminal and railroad cars, trucks, barges or vessel or any other means of conveyance to or from the terminal facility.

**MANAGEMENT:** IPH, its parents, subsidiaries, divisions, affiliates and/or joint ventures, and their respective officers, directors, agents and employees and all persons, firms, or other entities which may manage, own, control or operate the elevator facilities.

**OWNERS/OPERATORS:** The owner/s, operator/s, manager/s, charterer/s and/or agent/s, and their employees, of a vessel.

**STORAGE:** The service of providing warehouse facilities for the storing of grain.

**TRIMMING:** Distributing cargo in a ship so that the load will not shift and in order that the weight will be properly distributed, or whenever any equipment is attached to the loading spout for mechanical diversion of the grain flow into the vessel holds, or any vessel loading that requires restrictive flow of product on any one of the ship loading spouts.

**USERS:** The term "User" or "Users" shall include all individuals including vessel owners and/or operators and/or charterers and/or personnel and/or crewmembers and/or agents and/or managers and/or business entities, including all barges, trucks, railroad cars, vessels, watercraft or other means of conveyance and/or equipment used by said individuals or business entities, which use the services of the IPH elevator facility.

**VESSEL:** Whenever the words "vessel," "vessels" or "watercraft" appear in the tariff, it is understood that it is in reference only to dry bulk cargo ocean vessels or ocean-going barges of a type customarily engaged in the carriage of grain (private carriers only).

**WAREHOUSEMAN:** IPH, as engaged in the business of receiving and storing grain for others.

BERTH APPLICATION AND ASSIGNMENT

TO:  TRAFFIC DEPARTMENT
LAKE CHARLES HARBOR AND TERMINAL DISTRICT
P. O. BOX 3753
LAKE CHARLES, LA 70602

BERTH APPLICATION NO   1587

We hereby apply for Berth:

Vessel: **Sredna Gora**                              Type  **Bulk Carrier**

Charterers/Owners: **Sagitta Marine**               Port of Registry: **Malta**

Nationality: **Malta**          GRT  **24118**      Length: **189.99**

P&I Club: **West of England**

Arrival Draft: **21ft**                     Sailing Draft  **35ft**

ETA: **June 22nd - 23rd**       Sailing Date  **June 26-28th**   Days in Port: **8-9**

Agent: **Host Agency**                      Stevedore: **Sonice**

Cargo to be Loaded: **Soybean + Soybean Meal**  Total (Tons/lbs.): **approx 33,800 MT**

Will Lift Cargo for the Following Ports  **Colombia - TBC**

Next Port of Call: **TBC**                  Last Port of Call: **Coatzacoalcos, MX**

Cargo to be Discharged:                     Total (Tons/Lbs.):

Point of Origin:                            Line Handler  **JT Cade**

It is understood and agreed that the Lake Charles Harbor and Terminal District will not be responsible for the safety of any vessel nor injury or damage thereto, nor to the employees of any vessel, their agents or assigns, nor to the property of any vessel or the property of its employees, agents, or assigns, regardless of cause or source thereof, while tied-up at the facilities. NOTICE is given that weather conditions such as winds, tides, storms, or other similar conditions may, beyond the control of the Port of Lake Charles, suddenly vary and change conditions at the dock or within the Calcasieu River Ship Channel. The vessel, and not the Port of Lake Charles, solely controls (1) the amount of cargo loaded onto a vessel, (2) the cargo loading plan utilized for loading/unloading, and (3) all other vessel conditions affecting how the vessel utilizes the dock and the channel.

Layberths must be vacated when given four (4) hours' notice. Vessels failing to do so become liable for charges resulting from the violation.

The applicant further agrees to abide by all rules and regulations shown in the Lake Charles Harbor and Terminal District's Tariff No. 013 or the Tariff in place at the time and date the Port of Lake Charles accepted this application and all customs of the Port.

Further, all vessels, in addition to liabilities as provided by law, shall be responsible for the full extent of any damages caused by it to the facilities of the Lake Charles Harbor and Terminal District in particular, any vessel causing damage



EXHIBIT
B

shall be responsible for the full replacement cost (not the depreciated value) of any structure of the Lake Charles Harbor and Terminal District damaged and shall be responsible for all engineering, legal, and administrative costs incurred by the port in the making of such repairs.

Domestic, export, or import cargo booked for movement over Lake Charles Harbor and Terminal District facilities (Port of Lake Charles) is subject to rates, charges, rules and regulations published in the district's tariff no. 013 or the tariff in place at the time and date the Port of Lake Charles accepted this application, on file with the federal maritime commission.  Copy of current tariff can be found at www.portlc.com.

Vessels berthing at City Docks, in preparation for or during loading from the IFG bulk terminal, are subject to the Port of Lake Charles current tariff including but not limited to all charges for dockage, security, water and any supervision services.

All vessels are required to file a detailed final statement of facts within twenty four hours of the vessel sailing as required by Tariff item 406

Notices or Special Instructions:

Please file all copies with Port Authority office for completion

REQUESTED BY AND AGREED TO

*Brian Hess*

6/20/18
　　　　　　DATE

LAKE CHARLES HARBOR AND TERMINAL DISTRICT
PORT OF LAKE CHARLES:

Assigned

BERTH NO.　　　　　　　　　　DATE
　　* Subject to Availability

ILG Export Holding, LLC
Lake Charles, Louisiana

Terminal Use Application and Acceptance of Financial Responsibility

THIS TERMINAL USE APPLICATION ("APPLICATION") MUST BE SUBMITTED BY A DEPOSITOR, VESSEL, VESSEL CHARTERER, AND VESSEL AGENT PROPOSING TO DELIVER OR RECEIVE AGRICULTURAL PRODUCT AT THE ILG EXPORT GRAIN TERMINAL ("TERMINAL") AS FAR IN ADVANCE OF THE PROPOSED DATE OF DELIVERY OR OF ANY AGRICULTURAL PRODUCT TO THE TERMINAL AS POSSIBLE. USER WILL PROMPTLY NOTIFY ILG IN WRITING OF ANY CHANGES IN THE INFORMATION SUPPLIED BELOW. USER IS ADVISED THAT BLANK ENTRIES ON THIS FORM MAY RESULT IN REJECTION OF THIS APPLICATION BY ILG. ILG WILL NOTIFY THE USER OF UNACCEPTABLE APPLICATIONS.

| DEPOSITOR PARTICULARS | | | | |
|---|---|---|---|---|
| TERMINAL DEPOSITOR | PRODUCT | QUANTITY | QUALITY | DELIVERY BY □ TRUCK □ RAIL |
| EST. START DATE FOR INBOUND CARGO | | ITEMS REQUESTED (Additional charges apply) | | |
| | □ Aeration | □ Cleaning | □ Shoot | |
| | □ Fumigation | □ Blending | □ Lab Testing | |

| VESSEL PARTICULARS | | | | |
|---|---|---|---|---|
| VESSEL OR BARGE NAME/VOYAGE NUMBER | FLAG | GRT | LOA | BEAM | MAX DRAFT |
| MV Sredna Gora | Malta | 24118 | 189.99 | 28.50m | 35 FT 0 IN |
| VESSEL OWNER/OPERATOR/CHARTERER/P&I | | P&I CLUB LOCAL CONTACT | | LLOYDS NO. |
| Sagitta Marine | | West of England | | 9486520 |
| EST. BOARDING DATE/TIME | EST. DEPARTURE DATE/TIME | | EST. OUTBOUND TONS | |
| 6/22 - 6/23 | 6/28-6/30 | | 30,000 SBM + 3,500 Soybeans | |

NOTE: Vessel agents are advised that safety guidelines are handled by the Lake Charles Pilots in regard to vessel length, draft, beam, air draft and other factors that may affect the transit of the vessel on the Calcasieu Ship Channel. Please consult with the Lake Charles Pilots to determine if any restrictions apply.

All vessels, their owners, operator, and agents intending, to receive cargo at the terminal shall, prior to loading, file a version forth application with the port of Lake Charles, and provide a copy of the accepted berth application to Terminal superintendent.

THE UNDERSIGNED COMPANY, AGENT FOR THE ABOVE NAMED VESSEL OR BARGE, IN CONSIDERATION FOR APPROVAL OF THIS APPLICATION, AGREES TO BE BOUND BY ALL RULES, REGULATIONS, TERMS, CONDITIONS AND CHARGES AS SET FORTH IN THE ILG EXPORT GRAIN TERMINAL TARIFF(S), IN BEING ACCEPTANCE OF FINANCIAL RESPONSIBILITY THEREFORE.

| Date of Application: 6/20/18 | Applicant Company Name & Billing Address: Host Agency 350 Pine St, Ste 720 Beaumont, Tx 77701 | Name: Brian Hass Title: Operations Signature: Brian Hass |
|---|---|---|

**IFG PORT HOLDINGS LLC**
150 East 58th Street
29th Floor
New York, NY 10155
(212) 302-9000



Invoice

Bill To:
Host Agency
Edison Plaza
350 Pine St  Suite 770
Beaumont, TX 77701

Luzar Trading S A.
Torre Swiss Bank, Piso 2
Calle 53 Este
Urb. Marbella
Panama City  Panama

Ref #:  MV Sredna Gora
Invoice #: 2018-09-009
Invoice Date: 9/24/2018



Due Date: Upon Receipt

| Day | Date | From | To | Total Elevator Hours | Regular Operation Hours (8:00 AM-4:00 PM) | Elevator Overtime | Description | Elevator Overtime Per Hours $ | Total $ |
|---|---|---|---|---|---|---|---|---|---|
| FRI | 6/22/2018 | 7:30 | 16:30 | 9 | 8.00 | 1.00 | Elevator Overtime-MV Sredna Gora | 1,500.00 | 1,500.00 |
| SAT | 6/23/2018 | 7:30 | 12:30 | 5 | 0.00 | 5.00 | Elevator Overtime-MV Sredna Gora | 1,700.00 | 8,500.00 |
| SUN | 6/24/2018 | 10:00 | 12:00 | 2 | 0.00 | 2.00 | Elevator Overtime-MV Sredna Gora | 1,800.00 | 3,600.00 |
| MON | 6/25/2018 | 10:00 | 0:00 | 14 | 8.00 | 6.00 | Elevator Overtime-MV Sredna Gora | 1,500.00 | 9,000.00 |
| TUE | 6/26/2018 | 7:00 | 0:00 | 17 | 8.00 | 9.00 | Elevator Overtime-MV Sredna Gora | 1,500.00 | 13,500.00 |
| WED | 6/27/2018 | 7:00 | 21:00 | 14 | 9.00 | 5.00 | Elevator Overtime-MV Sredna Gora | 1,500.00 | 7,500.00 |
| TUE | 07/24/18 | 6:30 | 0:00 | 17 | 8.00 | 9.00 | Elevator Overtime-MV Sredna Gora | 1,500.00 | 13,500.00 |
| WED | 07/25/18 | 7:00 | 0:00 | 17 | 8.00 | 9.00 | Elevator Overtime-MV Sredna Gora | 1,500.00 | 13,500.00 |
| THU | 07/26/18 | 6:30 | 0:00 | 17 | 8.00 | 9.00 | Elevator Overtime-MV Sredna Gora | 1,500.00 | 13,500.00 |
| FRI | 07/27/18 | 7:00 | 0:00 | 17 | 8.00 | 9.00 | Elevator Overtime-MV Sredna Gora | 1,500.00 | 13,500.00 |
| SAT | 07/28/18 | 7:00 | 21:00 | 14 | 0.00 | 14.00 | Elevator Overtime-MV Sredna Gora | 1,700.00 | 23,800.00 |
| SUN | 07/29/18 | 7:00 | 0:00 | 17 | 0.00 | 17.00 | Elevator Overtime-MV Sredna Gora | 1,800.00 | 30,600.00 |
| MON | 07/30/18 | 7:00 | 0:00 | 17 | 8.00 | 9.00 | Elevator Overtime-MV Sredna Gora | 1,500.00 | 13,500.00 |
| TUE | 07/31/18 | 7:00 | 0:00 | 17 | 8.00 | 9.00 | Elevator Overtime-MV Sredna Gora | 1,500.00 | 13,500.00 |
| WED | 08/01/18 | 7:00 | 0:00 | 17 | 8.00 | 9.00 | Elevator Overtime-MV Sredna Gora | 1,500.00 | 13,500.00 |
| THU | 08/02/18 | 7:00 | 0:00 | 17 | 8.00 | 9.00 | Elevator Overtime-MV Sredna Gora | 1,500.00 | 13,500.00 |
| FRI | 08/03/18 | 7:00 | 0:00 | 17 | 8.00 | 9.00 | Elevator Overtime-MV Sredna Gora | 1,500.00 | 13,500.00 |
| SAT | 08/04/18 | 7:00 | 0:00 | 17 | 0.00 | 17.00 | Elevator Overtime-MV Sredna Gora | 1,700.00 | 28,900.00 |
| SUN | 08/05/18 | 7:00 | 0:00 | 17 | 0.00 | 17.00 | Elevator Overtime-MV Sredna Gora | 1,800.00 | 30,600.00 |
| | | | | | | | | Total | Continued |
| | | | | | | | | $ | - |
| | | | | | | | | Total: | Continued |

For payment via wire transfer, please remit funds to:

Bank Name  JPMorgan Chase
Routing/Sorting Code: 021000021
Swift/BIC Code: CHASUS33
Account Number: 950178959

Balances not paid within 15 days will be considered delinquent and subject to additional charges



EXHIBIT

C

**IFG PORT HOLDINGS LLC**
150 East 58th Street
29th Floor
New York, NY 10155
(212) 302-9000



# Invoice

Bill To:
Host Agency
Edison Plaza
350 Pine St, Suite 770
Beaumont, TX 77701

Luzar Trading S.A.
Torre Swiss Bank, Piso 2
Calle 53 Este
Urb. Marbella
Panama City, Panama

Ref #: MV Sredna Gora
Invoice #: 2018-09-003
Invoice Date: 9/24/2018

Due Date: Upon Receipt

| Day | Date | From | To | Total Elevator Hours | Regular Operation Hours (8:00 AM-4:00 PM) | Elevator Overtime | Description | Elevator Overtime Per Hours $ | Total $ |
|---|---|---|---|---|---|---|---|---|---|
| MON | 08/06/18 | 7:00 | 0:00 | 17 | 8.00 | 9.00 | Elevator Overtime-MV Sredna Gora | 1,500.00 | 13,500.00 |
| TUE | 08/07/18 | 7:00 | 20:00 | 13 | 8.00 | 5.00 | Elevator Overtime-MV Sredna Gora | 1,500.00 | 7,500.00 |
| WED | 08/08/18 | 7:00 | 0:00 | 17 | 8.00 | 9.00 | Elevator Overtime-MV Sredna Gora | 1,500.00 | 13,500.00 |
| THU | 08/09/18 | 7:00 | 0:00 | 17 | 8.00 | 9.00 | Elevator Overtime-MV Sredna Gora | 1,500.00 | 13,500.00 |
| FRI | 08/10/18 | 7:00 | 0:00 | 17 | 8.00 | 9.00 | Elevator Overtime-MV Sredna Gora | 1,500.00 | 13,500.00 |
| SAT | 08/11/18 | 7:00 | 0:00 | 17 | 0.00 | 17.00 | Elevator Overtime-MV Sredna Gora | 1,700.00 | 28,900.00 |
| SUN | 08/12/18 | 7:00 | 0:00 | 17 | 0.00 | 17.00 | Elevator Overtime-MV Sredna Gora | 1,800.00 | 30,600.00 |
| MON | 08/13/18 | 7:00 | 0:00 | 17 | 8.00 | 9.00 | Elevator Overtime-MV Sredna Gora | 1,500.00 | 13,500.00 |
| TUE | 08/14/18 | 7:00 | 0:00 | 17 | 8.00 | 9.00 | Elevator Overtime-MV Sredna Gora | 1,500.00 | 13,500.00 |
| WED | 08/15/18 | 7:00 | 0:00 | 17 | 8.00 | 9.00 | Elevator Overtime-MV Sredna Gora | 1,500.00 | 13,500.00 |
| THU | 08/16/18 | 7:00 | 0:00 | 17 | 8.00 | 9.00 | Elevator Overtime-MV Sredna Gora | 1,500.00 | 13,500.00 |
| FRI | 08/17/18 | 7:00 | 0:00 | 17 | 8.00 | 9.00 | Elevator Overtime-MV Sredna Gora | 1,500.00 | 13,500.00 |
| SAT | 08/18/18 | 7:00 | 0:00 | 17 | 0.00 | 17.00 | Elevator Overtime-MV Sredna Gora | 1,700.00 | 28,900.00 |
| SUN | 08/19/18 | 7:00 | 0:00 | 17 | 0.00 | 17.00 | Elevator Overtime-MV Sredna Gora | 1,800.00 | 30,600.00 |
| MON | 08/20/18 | 7:00 | 0:00 | 17 | 8.00 | 9.00 | Elevator Overtime-MV Sredna Gora | 1,500.00 | 13,500.00 |
| TUE | 08/21/18 | 7:00 | 0:00 | 17 | 8.00 | 9.00 | Elevator Overtime-MV Sredna Gora | 1,500.00 | 13,500.00 |
| WED | 08/22/18 | 7:00 | 0:00 | 17 | 8.00 | 9.00 | Elevator Overtime-MV Sredna Gora | 1,500.00 | 13,500.00 |
| THU | 08/23/18 | 7:00 | 17:00 | 10 | 8.00 | 2.00 | Elevator Overtime-MV Sredna Gora | 1,500.00 | 3,000.00 |
| | | | | | | | | Total | $   570,500.00 |
| | | | | | | | | $ | |
| | | | | | | | | Total: | $   570,500.00 |

For payment via wire transfer, please remit funds to:
Bank Name: JPMorgan Chase
Routing/Sorting Code: 021000021
Swift/BIC Code: CHASUS33
Account Number: 950178959

Balances not paid within 15 days will be considered delinquent and subject to additional charges.

**IFG PORT HOLDINGS LLC**
150 East 58th Street
29th Floor
New York, NY 10155
(212) 302-9000



## Invoice

Bill To:
Host Agency
Edison Plaza
350 Pine St, Suite 770
Beaumont, TX 77701

Luzar Trading S.A
Torre Swiss Bank, Piso 2
Calle 53 Este
Urb. Marbella
Panama City, Panama

Ref #: MV Sredna Gora - REV
Invoice #: 2018-09-009 - REV
Invoice Date: 8/19/2019

FILED   OCT 0 2 2019

*Kristen Lewis*

Deputy Clerk of Court
Calcasieu Parish, Louisiana

Due Date: Upon Receipt

| Day | Date | From | To | Total Elevator Hours | Regular Operation Hours (8:00 AM-4:00 PM) | Elevator Overtime | Description | Elevator Overtime Per Hours $ | Total $ |
|---|---|---|---|---|---|---|---|---|---|
| MON | 08/06/18 | 7:00 | 0:00 | 17 | 8.00 | 9.00 | Elevator Overtime-MV Sredna Gora | 1,500.00 | 13,500.00 |
| TUE | 08/07/18 | 7:00 | 20:00 | 13 | 8.00 | 5.00 | Elevator Overtime-MV Sredna Gora | 1,500.00 | 7,500.00 |
| WED | 08/08/18 | 7:00 | 0:00 | 17 | 8.00 | 9.00 | Elevator Overtime-MV Sredna Gora | 1,500.00 | 13,500.00 |
| THU | 08/09/18 | 7:00 | 0:00 | 17 | 8.00 | 9.00 | Elevator Overtime-MV Sredna Gora | 1,500.00 | 13,500.00 |
| FRI | 08/10/18 | 7:00 | 0:00 | 17 | 8.00 | 9.00 | Elevator Overtime-MV Sredna Gora | 1,500.00 | 13,500.00 |
| SAT | 08/11/18 | 7:00 | 0:00 | 17 | 0.00 | 17.00 | Elevator Overtime-MV Sredna Gora | 1,700.00 | 28,900.00 |
| SUN | 08/12/18 | 7:00 | 0:00 | 17 | 0.00 | 17.00 | Elevator Overtime-MV Sredna Gora | 1,800.00 | 30,600.00 |
| MON | 08/13/18 | 7:00 | 0:00 | 17 | 8.00 | 9.00 | Elevator Overtime-MV Sredna Gora | 1,500.00 | 13,500.00 |
| TUE | 08/14/18 | 7:00 | 0:00 | 17 | 8.00 | 9.00 | Elevator Overtime-MV Sredna Gora | 1,500.00 | 13,500.00 |
| WED | 08/15/18 | 7:00 | 0:00 | 17 | 8.00 | 9.00 | Elevator Overtime-MV Sredna Gora | 1,500.00 | 13,500.00 |
| THU | 08/16/18 | 7:00 | 0:00 | 17 | 8.00 | 9.00 | Elevator Overtime-MV Sredna Gora | 1,500.00 | 13,500.00 |
| FRI | 08/17/18 | 7:00 | 0:00 | 17 | 8.00 | 9.00 | Elevator Overtime-MV Sredna Gora | 1,500.00 | 13,500.00 |
| SAT | 08/18/18 | 7:00 | 0:00 | 17 | 0.00 | 17.00 | Elevator Overtime-MV Sredna Gora | 1,700.00 | 28,900.00 |
| SUN | 08/19/18 | 7:00 | 0:00 | 17 | 0.00 | 17.00 | Elevator Overtime-MV Sredna Gora | 1,800.00 | 30,600.00 |
| MON | 08/20/18 | 7:00 | 0:00 | 17 | 8.00 | 9.00 | Elevator Overtime-MV Sredna Gora | 1,500.00 | 13,500.00 |
| TUE | 08/21/18 | 7:00 | 0:00 | 17 | 8.00 | 9.00 | Elevator Overtime-MV Sredna Gora | 1,500.00 | 13,500.00 |
| WED | 08/22/18 | 7:00 | 0:00 | 17 | 8.00 | 9.00 | Elevator Overtime-MV Sredna Gora | 1,500.00 | 13,500.00 |
| THU | 08/23/18 | 7:00 | 17:00 | 10 | 8.00 | 2.00 | Elevator Overtime-MV Sredna Gora | 1,500.00 | 3,000.00 |
|  | 08/19/19 |  |  |  |  | 327.00 | Service Charge as per Tariff No. 2 |  | 186,553.50 |
|  |  |  |  |  |  |  |  | Total | $ 757,053.50 |
|  |  |  |  |  |  |  |  |  | $ - |

For payment via wire transfer, please remit funds to:

Bank Name: JPMorgan Chase
Routing/Sorting Code: 021000021
Swift/BIC Code: CHASUS33
Account Number: 950178959

| | Total: | $ 757,053.50 |

Balances not paid within 15 days will be considered delinquent and subject to additional charges.



EXHIBIT

D

## ILG Port Holding, LLC
### ILG Export Grain Terminal

### Terminal Use Application and Acceptance of Financial Responsibility

THIS TERMINAL USE APPLICATION ("APPLICATION") MUST BE SUBMITTED BY A DEPOSITOR, VESSEL, VESSEL OWNER/OPERATOR/CHARTERER AND VESSEL AGENT PROPOSING TO DELIVER OR RECEIVE AGRICULTURAL PRODUCTS AT THE ILG EXPORT GRAIN TERMINAL ("TERMINAL") AS FAR IN ADVANCE OF THE PROPOSED DATE OF DELIVERY OF ANY AGRICULTURAL PRODUCT TO THE TERMINAL AS POSSIBLE. USER WILL PROMPTLY NOTIFY ILG IN WRITING OF ANY CHANGES IN THE INFORMATION SUPPLIED BELOW. USER IS ADVISED THAT BLANK ENTRIES ON THIS FORM MAY RESULT IN REJECTION OF THIS APPLICATION BY ILG. ILG WILL NOTIFY THE USER OF UNACCEPTABLE APPLICATIONS.

| DEPOSITOR PARTICULARS | | | | |
|---|---|---|---|---|
| TERMINAL DEPOSITOR | PRODUCT | QUANTITY | QUANTY | DELIVERED BY □ TRUCK □ RAIL |
| EST. START DATE FOR INBOUND CARGO | SERVICES REQUESTED (Additional Charges Apply) □ Aeration   □ Cleaning   □ Silo IB □ Fumigation  □ Blending  □ Lab Testing | | | |

| VESSEL PARTICULARS | | | | | |
|---|---|---|---|---|---|
| VESSEL OR BARGE NAME/VOYAGE NUMBER | FLAG | GRT | LOA | BEAM | MAX DRAFT |
| MV Sredna Gora | Malta | 24118 | 189,99 | 28,50m | 35 FT 0 IN |
| VESSEL OWNER/OPERATOR/CHARTERER/LINE | P&I CLUB/LOCAL CONTACT | | | | LLOYDS NO. |
| Sagitta Marine | West of England | | | | 9486570 |
| EST. BOARDING DATE/TIME | EST. DEPARTURE DATE/TIME | | EST. OUTBOUND TONS | | |
| 6/22   6/23 | 6/28 6/30 | | 30,000 SBM + 3,800 Soybeans | | |

NOTE: Vessel agents are advised that safety guidelines are handled by the Lake Charles Pilots in regard to vessel length, draft, beam, air draft and other factors that may affect the transit of the vessel on the Calcasieu Ship Channel. Please consult with the Lake Charles Pilots to determine if any restrictions apply.

All vessels, their owners, traders, and agents intending to receive cargo at the Terminal shall, prior to berthing, file a written berth application with the Port of Lake Charles, and remit a duplicate of the accepted berth application to Terminal superintendent.

THE UNDERSIGNED COMPANY, AGENTS FOR THE ABOVE NAMED VESSEL OR BARGE, IN CONSIDERATION FOR APPROVAL OF THE APPLICATION, AGREES TO BE BOUND BY ALL RULES, REGULATIONS, TERMS, CONDITIONS AND CHARGES AS PUBLISHED IN THE ILG EXPORT GRAIN TERMINAL TARIFF(S), INCLUDING ACCEPTANCE OF FINANCIAL RESPONSIBILITY THEREFOR.

| Date of Application: | Applicant Company Name & Billing Address: | Phone: Brian Hass |
|---|---|---|
| 6/20/18 | Host Agency 350 Pine St, Ste 770 Beaumont, Tx 77701 | Title: Operations Signature: *Brian Hass* |



EXHIBIT

E

Page 1 of 4