UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

IFG PORT HOLDINGS, LLC                          CIVIL ACTION NO. 2:19-1454

VERSUS                                          JUDGE TERRY A. DOUGHTY

NAVIGATION MARITIME BULGARE                     MAG. JUDGE KATHLEEN KAY
a/k/a NAVIBULGAR, ET AL.

MEMORANDUM RULING

Pending before the Court is a Motion for Summary Judgment [Doc. No. 77], filed by

Defendants, Sagitta Marine S.A. ("Sagitta"), Luzar Trading S.A., and Luzar LLC ("Luzar") on

December 14, 2020, and a Motion for Summary Judgment [Doc. No. 80], filed by the

Defendants, Host Agency, LLC and T. Parker Host, Inc. ("Host") on December 15, 2020.

To the Motion for Summary Judgment filed by Sagitta and Luzar, [Doc. No. 77],

Petitioner, IFG Port Holdings, LLC ("IFG") filed and Opposition [Doc. No. 84] on January 4,

2021.  Sagitta and Luzar filed a Reply [Doc. No. 89] on January 11, 2021.

To the Motion for Summary Judgment [Doc. No. 80] filed by Host, IFG filed an

Opposition [Doc. No. 88] on January 6, 2021.  Host filed a Reply [Doc. No. 90] on January 11,

2021.

For the reasons set forth herein, both Motions for Summary Judgment [Doc. Nos. 77 and

80] are GRANTED.

A.      Background

IFG filed suit on October 2, 2019 in the 14th Judicial District Court, Parish of Calcasieu,

[Doc. No. 1, Exh. 1]  naming as Defendants Host, Luzar and Navigation Maritime Bulgare

("Navibulgar").  The suit was removed to this Court on November 7, 2019 [Doc. No. 1].  IFG's

suit is a breach of contract claim for charges allegedly incurred for overtime charges in regard to

a vessel, the M/V Sredna Gora.  In its petition, IFG attaches as an exhibit [Doc. No. 1, Exh. 1, Exh. A] Export Grain Terminal Tariff No. 2 ("the Tariff"), as the controlling contract between the parties.

An Amended Complaint [Doc. No. 9] was filed on November 22, 2019, which dismissed Navibulgar, without prejudice, and substituted Sredna Gora Maritime Ltd. ("SGM").  The Amended Complaint also added Sagitta, and added the subject vessel, SREDNA-GORA-IMO-9486570-MMSI-249745000 ("GORA"), requesting additional relief declaring a maritime lien against the subject vessel.

### B.    Law and Analysis

The issue in both motions for summary judgment is whether the defendants, Sagitta, Luzar and Host are responsible to IFG for overtime charges incurred by IFG in loading the vessel, the M/V SREDNA GORA, at IFG's terminal between June 25, 2018 and August 23, 2018.  All parties agree that the controlling contract between the parties is the tariff.  The issue in both motions for summary judgment involves contractual interpretation.

Between March 9, 2018 and June 5, 2018, Luzar purchased 33,800 metric tons of soymeal and soybeans from Tradiverse Corporation ("Tradiverse").  The product was to be loaded at IFG's Lake Charles terminal.  There were three contracts signed between Luzar and Tradiverse, all of which referred to the tariff for imposition of overtime charges [Doc. No. 77, Exh. A-1].  IFG was not a party to the contract between Luzar and Tradiverse.

Sagitta chartered the M/V SREDNA GORA and sub-chartered the vessel to Luzar.  Brian Hass, a representative for Host, signed a Berth Application and Assignment [Doc. No. 80, Exh. 6] and a Terminal Use Application and Acceptance of Financial Responsibility [Doc. No. 80,

2

Exh. 1] for the loading of the vessel at IFG's Lake Charles terminal.  Both of these documents incorporated IFG's tariff.

Loading began on the vessel on June 25, 2018.  On June 28, 2015, a fire broke out at IFG's terminal resulting in the vessel anchoring elsewhere until the damage was repaired.  The vessel set at anchor off the coast of Louisiana from June 28, 2018 until July 23, 2018.

On July 24, 2018, loading resumed and was completed on August 23, 2018.  On September 24, 2018, IFG invoiced the Defendants a total of $570,500 for overtime charges between June 22, 2018 and August 23, 2018 [Doc. No. 80, Exh. 4].  IFG now maintains, with additional charges, this amount now exceeds $1,000,000 [Doc. No. 88, Exh 1].

The pertinent language in the tariff relating to overtime is Section III L, which reads as follows: *awaiting loading that can be accommodated at the elevator or whenever the elevators are threatened with congestion, the vessel occupying the berth shall within the sole judgment and discretion of elevator management, be required to work overtime at the expense of the vessel.  By filing an Application for Berth and/or a Terminal Use Application, **the vessel and/or owner/s and/or operator/s and/or agent agrees either to work overtime if required by the elevator or to vacate the berth assigned if ordered by the elevator.  Should any vessel refuse to work overtime when required, it shall lose its turn and vacate the berth in favor of the next vessel that is willing to continuously work overtime,** which vessel shall retain the berth so long as it is willing to work successive straight time and overtime periods until loading is completed.  The vessel so losing its turn shall forfeit its berth assignment and shall be entitled to the berth first available thereafter, subject to the same overtime provisions set forth above, if the circumstances requiring overtime work are then found to still exist in the opinion of the elevator management.*

Summary judgment is appropriate when the evidence before a court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharm. Corp.,* 283 F.3d 254, 263 (5th Cir. 2002). Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id.* "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

In evaluating a motion for summary judgment, courts "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E & P USA Inc. v. Kerr–McGee Oil and Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (citations omitted). While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.,*

37 F.3d 1069, 1075 (5th Cir. 1994).  To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that a genuine issue of material fact exists.  *Hamilton v. Segue Software, Inc*., 232 F.3d 473, 477 (5th Cir. 2000) (emphasis added).  "'If the evidence is merely colorable, or is not significantly probative,' summary judgment is appropriate." *Cutting Underwater Tech. USA, Inc. v. Eni U.S. Operating Co*., 671 F.3d 512, 517 (5th Cir. 2012) (quoting *Anderson,* 477 U.S. at 248).

Relatedly, there can be no genuine dispute as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.,* 477 U.S. at 322-23.  This is true "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 323.

The Tariff is a contract that must be considered within its "four corners," and any ambiguity must be construed against its drafter. *Corbitt v. Diamond M. Drilling Co.,* 654 F.2d 329, 332-333 (5th Cir. 1981) ("[T]he court need not go beyond the four corners of the contract. The plain language of the contract is the best measure of the parties' intent.

"The elements of a breach of contract claim under federal maritime law are: (1) a contract between the parties; (2) a breach of that contract; and (3) damages." *Reel Pipe, LLC v. USA Comserv, Inc.,* 427 F.Supp.3d 786, 800 (E.D. La. 2019).

> When interpreting a maritime contract, the court applies the general ordinary rules of contract construction and interpretation. . . . Interpretation of the terms of a contract is a matter of law.  The terms of a maritime contract are given their plan meaning unless the provision is ambiguous.  If a contract's language as a whole is clear, explicit, and leads to no absurd consequences, and as such it can be given only one reasonable interpretation, it is not ambiguous.  Under federal maritime law only if the contract provision is ambiguous may a court look beyond the written language of the contract to determine the intent of the parties.

*B.P. Exploration & Production, Inc. v. Cashman Equipment Corp.,* 132 F.Supp. 3d 876, 883-884 (S.D. Tex. 2015).

IFG argues that Terminal Tarif No. 2 does not require either notice to or consent of the Defendants.  IFG further argues that if notice or consent is required, the "daily activity sheets", provided by Sonic Stevedores, LLC, to the vessel are sufficient.  IFG additionally argues an email sent on June 20, 2018 (before the loading began) asking whether IFG or the owners would be ordering and paying for overtime for the weekend loading of the vessels, shows notice of the overtime charges.

Sagitta, Luzar and Host argue that the Tariff requires that the vessel is required to be given notice that overtime will be charged in order for a vessel to be able to refuse overtime and vacate the berth.  The Defendants also argue that in a breach of contract suit, there must first be "a contract", which requires a meeting of the minds of the parties.

All parties agree that the Tariff is the applicable provision upon which IFG charged overtime to the Defendants.  IFG did not specifically notify any of the Defendants it was going to charge overtime.  The Tariff requires the following in order for IFG to charge overtime:

> 1.  There are more vessels in port awaiting loading that can accommodated at the elevator or whenever the elevators are threatened with congestion, the elevator manager has sole discretion to work overtime at the expense of the vessel;
> 2.  The vessel and/or owner and/or operator/s and/or agent (by filing an Application for Berth and/or a Terminal Use Application) agrees <u>either</u> to work overtime if required by the elevator <u>or</u> to vacate berth assigned <u>if ordered</u> by the elevator.  When <u>required</u> to work overtime, any vessel that refuses shall lose its turn and vacate the berth.
> 3.  Any vessel that refuses to work overtime and loses its berth shall forfeit its berth assignment and shall be entitled to the first berth available thereafter.

The Tariff gives IFG the discretion to charge overtime if the elevator is congested.  The Tariff also gives the vessel and/or owner and/or operator and/or agent the right to refuse the

overtime charges and vacate the berth.  How is one of these parties supposed to be able to refuse overtime charges if they are not aware that overtime is being charged?  Additionally, how can a party contractually agree to overtime charges they don't know are being charged?  The obvious answer is, THEY CAN'T.

The first element of a breach of contract is "a contract."  There is no contract here.  There was no "meeting of the minds" regarding the charging of overtime.  Sagitta, Luzar and Host were not told by IFG that overtime was being charged, so they couldn't agree to it.  Additionally, any ambiguity in the contract is to be construed against IFG.  Although the tariff does not specifically use the word "notice", the tariff contemplates some type of communication to the defendants to make them aware overtime is going to be charged.

IFG additionally argues the "daily activity sheets" provided to the vessel by Sonic Stevedores, LLC and/or a June 20, 2018 email provided notice to defendants of the overtime charges.  The daily activity sheets were provided by Sonic Stevedores, LLC to the vessel which indicated the precise hours worked on each day of loading operations.  "Overtime hours" is defined in the Tariff as "hours of work performed on Saturday, Sunday and Holidays, or before 8:00 a.m. and after 4:00 p.m. Monday through Friday."  Since the loading had been delayed for almost a month due to a fire at IFG's Terminal, the Defendants could not know overtime was being charged here.  The daily activity sheets did not notify the Defendants that overtime was being charged for those hours.  They are not even arguably sufficient to form a contract for overtime hours.

On June 20, 2018, an email was sent by Host, requesting whether IFG or the owners would be ordering and/or paying for overtime charges for the weekend loading of the vessel. IFG simply referred Host to the tariff.  This was simply a question about whether overtime was

being charged, and if so, who was going to pay for it.  It was not an agreement to pay for overtime charges.

### C.       CONCLUSION

Sagitta, Luzar and Host were not told overtime was being charged by IFG.  Therefore, there was no contract, and no breach of contract.

Therefore, Sagitta Marine SA, Luzar Trading SA and Luzar, LLC's Motions for Summary Judgment are GRANTED.

MONROE, LOUISIANA this 20th  day of January, 2021.

TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE